IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA M. HARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:09cv453 |
| v. ) | |
| ) | |
| THE KROGER CO., ) | By: Hon. Michael F. Urbanski |
| ) | United States Magistrate Judge |
| Defendant. ) | |

MEMORANDUM OPINION

This matter is before the court on defendant's Motion for Summary Judgment (Dkt. #12). Plaintiff Lisa M. Harrison ("Harrison") brings this premises liability action in connection with a slip-and-fall incident that took place on August 26, 2006, at a grocery store owned and operated by The Kroger Company ("Kroger") located at 161 Electric Road, Lakeside Plaza in Salem, Virginia. Harrison originally filed suit in state court. Kroger removed the case to federal court and filed an Answer denying all liability. Subsequently, the case was voluntarily dismissed. Harrison re-filed her Complaint in this court on November 12, 2009. The parties have consented to the undersigned's jurisdiction over this matter, and by Order dated January 20, 2010, the case was transferred to the undersigned for all further proceedings. Discovery is complete, and this matter is ripe for summary judgment. The issues have been fully briefed and were argued by counsel at a hearing held on June 14, 2010. For the reasons stated herein, defendant's motion for summary judgment is **GRANTED**.

I.

The facts of this case are largely undisputed. On August 26, 2006, Harrison went to the Lakeside Kroger store with her fiancé, Alvin D. Boothe ("Boothe"), in the late afternoon after

returning home from a vacation. The pair split up to shop, and Harrison picked up two twelve-packs of canned beer and a bottle of wine before proceeding to the bread/dairy aisle to look for bread. Harrison was wearing a pair of "your basic 99-cent flip-flops" and carrying the two beer cases under her left arm and the wine in her right hand, grasping the neck of the bottle. The aisle was very wide, with bread on one side and dairy products on the other. Harrison turned the corner into the bread aisle and reached up to a shelf for a loaf of bread, using the hand that was holding the bottle of wine. At that point Harrison slipped and fell. When she stood up, she saw a puddle of light-pink liquid that she estimated to be about the size of an 8 1/2-by-11-inch sheet of paper. Harrison thought it might be pink lemonade.

Prior to the incident, Harrison visited the Lakeside Kroger once or twice a week, and was familiar with the store. She testified that she would have seen the pink puddle if she had been looking at the floor, which was white, and did in fact see it while standing at least ten feet away following the incident. Boothe, who was in a different part of the store at the time of the incident, testified that he could see the puddle of "pinkish-colored liquid" while standing four or five feet away. He estimated it to be about three feet in size. Neither Harrison nor Boothe has firsthand knowledge of how the substance came to be on the floor, nor how long it was there.

Richard Chambers ("Chambers"), a Kroger employee, was stocking the dairy side of the aisle when Harrison fell, and was standing about half an aisle length away. In a declaration filed pursuant to 28 U.S.C. § 1746, Chambers stated that he had been in the area of the fall within five to ten minutes of the accident and did not see any foreign substance there at that time or at any other time during the day. The Kroger manager on duty, Ricky Ellis ("Ellis"), likewise stated in a declaration that he did not see any foreign substance on the floor when he inspected the aisle no more than five minutes before Harrison's fall. Harrison testified that she had not seen anything

2

on the floor before she slipped. She testified that after she fell, Chambers asked, "Ma'am, did you not see that? Are you okay?" He then approached her, and Harrison believes, but could not remember with certainty, that he helped her to stand and pick up the items she had been carrying.

## II.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). The non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)). In determining whether summary judgment is appropriate, the court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). Nevertheless, where the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991) (citing Matsushita Elec., 475 U.S. at 587, and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)).

## III.

Kroger argues that summary judgment is appropriate in this case because Harrison has failed to prove that Kroger had actual or constructive notice of any dangerous condition on the floor prior to her fall. In the alternative, Kroger argues that Harrison was contributorily negligent as a matter of law. For the reasons set forth in detail below, the court finds that Kroger is entitled to summary judgment because Harrison cannot prove that Kroger created the

hazardous condition or had actual or constructive knowledge of the puddle of pink liquid. Thus, it is unnecessary to reach the question of contributory negligence.

A.

In Virginia, a store owner owes its customers a duty to exercise ordinary care towards them when they are visiting the premises.[1] Winn-Dixie Stores, Inc. v. Parker, 240 Va. 180, 182, 396 S.E.2d 649, 650 (1990) (citing Colonial Stores v. Pulley, 203 Va. 535, 537, 125 S.E.2d 188, 190 (1962)); see generally Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003) (stating that in order to establish actionable negligence, Virginia law requires a plaintiff to show "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage"). Discharging this duty requires a store owner:

> to have the premises in a reasonably safe condition for [a customer's] visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of the unsafe condition if it was unknown to her, but was, or should have been, known to the defendant.

Colonial Stores, 203 Va. at 537, 125 S.E.2d at 190; see also Winn-Dixie, 240 Va. at 182, 396 S.E.2d at 650. Where a premises owner's affirmative conduct is alleged to be the cause of an unsafe condition, Virginia courts impute notice to the defendant if the danger was reasonably foreseeable. Memco Stores, Inc. v. Yeatman, 232 Va. 50, 55, 348 S.E.2d 228, 231 (1986). In Yeatman, plaintiff slipped and fell on a green slimy substance determined to be a plant leaf that had fallen near a furniture display in defendant's store. Id. at 51, 348 S.E.2d at 229. Evidence adduced at trial supported the theory that a peperomia plant was taken from the patio and placed near the edge of a furniture display by defendant's employees, and that a leaf fell to the floor,

---

[1] As federal jurisdiction in this case is based on diversity, Virginia state substantive law controls. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

causing plaintiff to slip. Id. at 53-54, 348 S.E.2d at 230. The court held that "[i]f an ordinarily prudent person, given the facts and circumstances Memco new or should have known, could have foreseen the risk of danger resulting from such circumstances, Memco had a duty to exercise reasonable care to avoid the genesis of the danger." Id. at 55, 348 S.E.2d at 231.

However, courts have rejected Yeatman's foreseeability standard where a defendant's conduct was merely "passive." Ashby v. Faison & Assoc., Inc., 247 Va. 166, 170, 440 S.E.2d 603, 605 (1994). In Ashby, the court characterized as "passive conduct" defendants' failure to remove or warn the plaintiff of water tracked into the lobby of an office building by a third party on a rainy day. Id. at 169-70, 440 S.E.2d at 605. The Ashby court distinguished the facts from the situation in Yeatman, in which the hazardous condition on the floor resulted from the defendant's affirmative conduct of moving a plant from the patio to the furniture display. Id. at 169, 440 S.E.2d at 605. Unlike Yeatman, there was no affirmative conduct in Ashby. Rather, plaintiff's theory was that a "third person entering the building either tracked water into the lobby or shook it from an umbrella and that the defendants' conduct in failing to remove the water or to warn her of its presence caused her injury." Ashby, 247 Va. at 169-70, 440 S.E.2d at 605. Under these circumstances, the court held that the appropriate standard is "whether the defendants had actual or constructive notice, that is, whether they knew or should have known, of the presence of the [hazardous condition] that caused [plaintiff's] fall and failed to remove it within a reasonable time or to warn of its presence." Id. at 170, 440 S.E.2d at 605; Turley v. Costco Wholesale Corp., 220 F. App'x 179, 181 (4th Cir. 2007) ("When, as here, the dangerous condition resulted from passive conduct, the plaintiff may prevail only if he shows that 'defendants had actual or constructive notice' of the dangerous condition." (quoting Ashby, 247 Va. at 170, 440 S.E.2d at 605)); Winn-Dixie, 240 Va. at 184, 396 S.E.2d at 651 (holding because

5

plaintiff failed to establish affirmative conduct on the part of the defendant, it became his burden to prove defendant had either actual or constructive notice of the hazardous condition and failed to remove it); see also Layne v. Wal-Mart Stores East L.P., No. 4:06cv025, 2007 WL 128320, at *3 (W.D. Va. Jan. 11, 2007) (where the plaintiff had been struck on the head by a loose iron ostensibly placed atop a box by another customer, court held that defendant had not engaged in affirmative conduct sufficient to trigger Yeatman's foreseeability test).

**B.**

In the instant case, Harrison testified that she has no knowledge of how the pink liquid came to be on the floor, and she offers no evidence to establish that any affirmative act by Kroger caused the pink liquid to accumulate on the floor.[2] Therefore, she must establish Kroger had actual or constructive notice of the condition in order to show that it breached its duty of care.

Harrison argues that a reasonable juror could infer from Chambers' statement, "[D]id you not see that?", that Kroger had actual knowledge of the puddle before the accident. However, Harrison's argument ignores the statement made in Chambers' declaration (which plaintiff does not dispute) that he had been in the area of plaintiff's fall five to ten minutes prior and had not seen any foreign substance on the floor. Moreover, he was working half an aisle-length away from Harrison when she fell. The logical inference to draw from these facts is that Chambers saw the puddle for the first time after - rather than before - Harrison's fall, as he looked in her direction after hearing her cry out. A reasonable juror could not conclude that defendant had actual knowledge of the condition without resorting to speculation and conjecture. See Abbott v.

---

[2] It is also worth noting that plaintiff slipped in the bread aisle, not in an aisle displaying any type of pink liquid, which lends further support to a finding that the liquid did not come to be on the floor due to defendant's affirmative conduct.

6

Kroger Co., 20 F. App'x 201, 202 (4th Cir. 2001) (per curiam) (affirming the district court's award of summary judgment to the defendant where the plaintiff's theory required speculation as to actual and constructive knowledge of the spill). Plaintiff's reliance on Chambers' statement is simply not enough to establish that Kroger had actual knowledge of the hazardous condition. Therefore, plaintiff must show constructive knowledge in order to advance her claim.

### C.

In premises liability cases such as the present action, where the defendant neither created nor had actual knowledge of the defect, it is possible to establish constructive knowledge by showing that the condition was noticeable and had existed for enough time to charge the store owner with notice of the hazardous condition. Grim v. Rahe, Inc., 246 Va. 239, 242, 434 S.E.2d 888, 890 (1993); see also Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 454 (4th Cir. 2004) (finding that in order to prove constructive notice, the plaintiff had to prove when that afternoon the specific unsafe condition developed). "[I]f the evidence fails to show *when* a defect occurred on the premises, the plaintiff has not made out a *prima facia* case [of negligence]." Grim, 246 Va. at 242, 434 S.E.2d at 890 (emphasis in original) (citing Winn-Dixie Stores, Inc. v. Parker, 240 Va. 180, 184, 396 S.E.2d 649, 651 (1990)); see also Abbott, 20 F. App'x at 201-02 ("[E]vidence regarding when a defect such as a spill occurred is part of the prima facie case for negligence.").

In Grim, the court held that plaintiffs failed to establish constructive knowledge because "there is absolutely no evidence as to when the fixture was broken, how it was broken . . . . It could have been broken five minutes [before the accident] or sooner." Id. at 242-43, 434 S.E.2d at 890. Likewise, in the Winn-Dixie case, plaintiff's inability to establish the length of time a loose snap bean was on the floor prior to her fall was fatal to her claim for negligence. 240 Va.

7

at 184, 396 S.E.2d at 651. The court noted, "'[i]t is just as logical to assume that it was placed on the floor an instant before [Parker] struck it as it is to infer that it had been there long enough that [Winn-Dixie] should, in the exercise of reasonable care, have known about it.'" Id. at 184, 396 S.E.2d at 651 (alterations in original) (quoting Colonial Stores, Inc. v. Pulley, 203 Va. 535, 537-38, 125 S.E.2d 188, 190 (1962)).

In the case at bar, plaintiff similarly has failed to adduce any evidence of how long the puddle was on the floor. Neither Harrison nor her fiancé Boothe has firsthand knowledge of when the puddle appeared or how it came to be on the floor. As in Winn-Dixie, it is just as logical to assume that the unsafe condition was created moments before the accident as it is to think that it had existed long enough to impute notice to defendant.

Plaintiff nevertheless argues that Kroger had constructive knowledge of the puddle because its employee Richard Chambers was in the same aisle when Harrison fell and should have seen the pink liquid. The Fourth Circuit has declined to impute notice to a store owner based solely on the proximity of employees to the site of an accident. Gauldin v. Va. Winn-Dixie, Inc., 370 F.2d 167, 170 (4th Cir. 1966). In Gauldin, a store clerk was standing eight to ten feet from the plaintiff when he slipped on a radish, about half an hour after the clerk had swept the floor without seeing any hazard. Id. at 170. The court held that:

> To permit the jury to conclude that [the store clerk], who was engaged in his duties eight to ten feet from the point of the accident, should have been on a constant alert for a radish on the floor of the aisle which he had so recently swept and to the point of neglecting his duty to tend the display counters, would . . . , in effect, make the defendant an insurer of the safety of its customers.

Id. at 170. Therefore, the court found that the facts did not support a finding of negligence.

8

On the other hand, in Garlick v. Safeway, Inc., No. 082469, 2009 WL 3447286, at *2 (Va. Oct. 23, 2009), the court held that plaintiff offered evidence sufficient to show constructive notice based on employee proximity to the location of the fall, without demonstrating when the hazard appeared. The plaintiff in Garlick slipped in a puddle of water at the exact location where a store employee had been unloading refrigerated cheese from a cart moments before. Id. at *1. Another employee testified that he had repeatedly observed water dripping from carts used to stock refrigerated or frozen goods. Id. at *1. In addition, the manager had approached the plaintiff after her fall, apologized, and said that employees were expected to clean up after themselves after stocking. Id. at *1. The court held that this was sufficient evidence from which a jury could reasonably infer that the defendant's employee "either allowed the water to accumulate on the floor or was standing in or so near water of a sufficient quantity that the employee should have recognized the danger posed." Id. at *2.

Additionally, in Myers v. The Kroger Co., No. 7:08cv402, 2009 WL 251953 (W.D. Va. Feb. 2, 2009), the court held that a store clerk's proximity to the area where plaintiff slipped was sufficient to support a finding of constructive notice. Id. at *2. In Myers, the clerk had been stocking grapes in the area of the fall ten minutes prior to the accident and admitted that he should have seen the hazard, having been trained to look for foreign objects on the floor. Id. at *1-2. The clerk testified the store was "pretty dead" that evening and that he saw no other customers, which indicates that the hazard was not created by a third party after the clerk left the grape display. Id. at *2. The court distinguished the facts of the case from Gauldin by emphasizing that in Myers, the clerk was not merely near the dangerous condition, "his own testimony places him almost directly over the crushed grapes ten minutes before the fall, and he admits he should have seen them." Id. at *2. Thus, the court held it was reasonable to infer from

9

the evidence that defendant's employee should have seen the crushed grapes when he was in the area, and "'[the store owner's] duty to warn against or remedy the dangerous condition had been triggered.'" Id. at *3 (alteration in original) (quoting Austin v. Shoney's, Inc., 254 Va. 134, 139, 486 S.E.2d 285, 288 (1997)).

In both Garlick and Myers, plaintiffs presented evidence that an employee of the defendant was uniquely situated to recognize an unsafe condition, either because the employee had created the hazard, or because the employee was "in" or "directly over" the area of the dangerous condition. The facts of those cases also foreclose the possibility that a third party had created the dangerous condition in the interval between the employee's departure from the area and the plaintiff's fall. In this case, by contrast, the evidence suggests that a third person indeed created the spill after Kroger employees Chambers and Ellis visually inspected the area. Further distinguishing this case from Garlick and Myers is the fact that Chambers was not working directly over the spot where Harrison fell. Nor had he been engaged in stocking any type of pink liquid. Rather, Harrison's testimony indicates that Chambers was standing half an aisle length away from the puddle, occupied with the task of stocking dairy products on the opposite side of the wide bread/dairy aisle, when she fell. Harrison does not offer evidence to suggest that Chambers, Ellis, or any other Kroger employee had been working at the site of her fall around the time of the incident or at any other time that day.

There is simply no evidence that Kroger knew of the presence of the pink puddle on the floor, nor has plaintiff made any showing of the length of time it had been there. Without such evidence, Harrison cannot make out a prima facie case of negligence. See Grim v. Rahe, Inc., 246 Va. 239, 242, 434 S.E.2d 888, 890 (1993). A jury could only arrive at the conclusion that Kroger had constructive notice "as the result of surmise, speculation and conjecture," Colonial

Stores, Inc. v. Pulley, 203 Va. 535, 538, 125 S.E.2d 188, 190 (1962), and "Virginia law does not allow speculation on the issue." Abbott v. The Kroger Co., 20 F. App'x 201, 202 (4th Cir. 2001).

### IV.

Considering the record as a whole and drawing all inferences in the light most favorable to Harrison, a reasonable jury could not find that Kroger knew or should have known of the condition which caused plaintiff to slip. Harrison offers no evidence of when the puddle appeared, nor does can she demonstrate that the circumstances surrounding her fall triggered a duty on the part of Kroger to warn against or remedy the unsafe condition. Additionally, Harrison has failed to offer evidence that Kroger had actual knowledge of the puddle, or that Kroger's affirmative conduct created the puddle. Thus plaintiff has not made out a prima facie case of negligence as a matter of law. Accordingly, Kroger's Motion for Summary Judgment (Dkt. # 12) is **GRANTED**.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered: July 16, 2010.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge